UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MATTHEW J. MALONE,<br><br>Plaintiff,<br><br>v.<br><br>COBY SPRIGGS, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-994-PPS-AZ |

OPINION AND ORDER

Matthew J. Malone, a prisoner without a lawyer, filed a complaint against eight defendants alleging he was subjected to excessive force and unconstitutional conditions of confinement at the Miami Correctional Facility. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Malone alleges that, on June 29, 2025, between 2:00 and 2:45 p.m., Officer Colby Spriggs approached his cell door and asked to see what he had in his hands. ECF 2 at 3. Malone showed Spriggs a battery, which he was using to make a beating sound on his cell door. *Id*. Spriggs then asked Malone again to show him what he was holding in his hands. *Id*. Malone held out his hands with his palms open and showed him he had a

battery in one hand. *Id*. Malone then held out his hands one more time but, before doing so, he put the battery on his sink where Spriggs could see it. *Id*. Spriggs then told Malone to back up and show him his hands as he pulled out his mace can. *Id*. At that point, Malone avers that he was holding up his hands and they were empty. *Id*. Spriggs next opened Malone's tray slot and put his mace can through the slot and told Malone to "back up" or he would "spray [his] ass," and then began to laugh. *Id*. at 3-4. Malone asked Spriggs to turn on his body cam, but, instead, Spriggs began to mock what Malone was doing with his hands. *Id*. at 4. Spriggs then stated to Malone, "Why you doing like this, why you doing this" as he was holding up his hands in a surrender position and backing up and mocking him. *Id*.

At some point between 2:20 and 2:50 p.m., on June 29, Spriggs and Officer E. Stone went to Malone's cell to give him his lunch tray. *Id*. When they approached his cell door, Malone could see Spriggs was holding his mace can and smiling. *Id*. Malone contends he told Stone that he did not feel comfortable with Spriggs being at his cell door because Spriggs was trying to provoke him. *Id*. Malone asserts Stone asked him if he would accept his meal tray if Stone opened the tray slot. *Id*. Malone agreed to take his tray, at which point, Spriggs opened the tray slot and aimed his mace can into the tray slot while Stone pushed the tray into Malone's hands. *Id*.

Between 3:00 and 3:35 p.m., Spriggs and Stone once again approached Malone's cell door, saying they believed he was flooding his cell with water. *Id*. at 5. However, Malone asserts he was not flooding his cell and, instead, inmates on the 200 range of AHU were flooding their cells and water was dripping over the range and down the

stairs into his cell. *Id*. As water was coming into his cell, Malone asserts his toilet began to overflow because it did not flush properly. *Id*. Malone then began to flush his toilet continuously in an attempt to force feces and toilet paper down it. *Id*. During these events, he contends Spriggs opened his tray slot, placed his mace can in it, and, as he walked toward the slot, Spriggs removed the can and closed the slot. *Id*. Spriggs then told Malone to stop flooding his cell, but Malone told him he was having toilet issues. *Id*. Spriggs told Malone that he would spray him with mace if he did not stop flooding his cell. *Id*. Malone asserts that Spriggs then proceeded to put his mace can in the tray slot several times and quickly removed it in an attempt to spray his face. *Id*.

After Spriggs pointed his mace can in Malone's tray slot, Stone told him to cuff up because they were going to escort him to the shower area so they could remove the water from his cell. *Id*. at 6. However, Malone told Stone he did not want to go to the shower area because an inmate had thrown feces in it. *Id*. After Stone assured Malone he would be put in a clean shower, Malone put his hands through the slot for Stone to cuff him. *Id*. Stone then instructed Spriggs to back up and while Malone was being pulled out of his cell, Spriggs told Malone to "get to walking/keep walking" at which point Malone spit on the ground in front of Spriggs to show him disrespect. *Id*. Spriggs then rushed toward Malone and Stone tugged on the cuffs on Malone's wrist and pulled him. *Id*. Spriggs next pulled out his Taser gun, pointed it at Malone, walked toward Malone, and then slipped and fell on the wet floor. *Id*. Malone laughed at Spriggs when he fell down. *Id*. After Spriggs got up off the floor, Spriggs and Stone pushed and slammed Malone against a wall. *Id*. Spriggs then placed his Taser gun on

Malone's back and began pushing Malone to try to trip him so he would fall on the floor in the toilet water. *Id.* at 6-7. Spriggs then kicked Malone in his side with his foot and Spriggs and Stone dragged Malone on the floor through toilet water to the shower area, where they pushed and slammed him into the shower pit. *Id.* at 7. Spriggs then stepped into the shower pit and told Malone to turn around before he sprayed him with mace. *Id.* However, Stone told Spriggs to step out of the shower and then removed Malone's cuffs. *Id.* Malone further asserts that, while his back was turned, Spriggs came to the sidewall of the shower area, which was hidden from his view, reached for his mace can and leaned around the wall and sprayed Malone in his back, neck, arm, shoulder, ear, hair, and eyes. *Id.* Malone states he sustained physical pain and emotional trauma as a result of the excessive force. *Id.* at 8.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Jails are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It

is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890. Here, additional fact finding may demonstrate that the force used against Malone was not excessive, but giving him the benefit of the inferences to which he is entitled at this stage of the case, he has stated Eighth Amendment excessive force claims against Spriggs and Stone for pushing and slamming him against a wall, kicking and dragging him on the floor through toilet water to the shower area, and pushing and slamming him into the shower pit on June 29, 2025. Furthermore, Malone has stated an Eighth Amendment excessive force claim against Spriggs for spraying him with mace on his back, neck, arm, shoulder, ear, hair, and eyes.

Next, Malone asserts that, after Spriggs and Stone dragged him into the shower area, they entered his cell and removed his personal property. ECF 2 at 8. His property included his mat, phone book, books, clothes, towels, headphones, tablet, photo ticket, papers, and folders. *Id.* After removing his property from his cell, Spriggs and Stone

placed it near a trash bin and continuously pushed toilet water onto it. *Id*. at 8-9. When Malone returned to his cell, he noticed the pages from his phone book were missing along with his headphones, toothbrush, and photo ticket. *Id*. at 9. Malone's mattress was also wet from the toilet water. day. *Id*. Malone states that he filed a tort claim, but he did not receive a response. *Id*.

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. But the loss of property, alone, does not state a claim under the Fourteenth Amendment. That amendment requires a loss of property *without due process*. Here, Indiana provides a process for Malone to use if he believes his property was wrongfully taken from him, and that process satisfies the due process clause.

Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). These state laws provide a method for Malone to seek reimbursement for the negligent loss or intentional deprivation of property, and that meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.").

Thus, additional process was available to Malone, and the complaint does not state a claim against Spriggs or Stone for taking or damaging his property.

Malone next asserts that, on June 29, 2025, between 10:39 and 11:00 p.m., Spriggs and Stone escorted him from the shower area back to his cell. ECF 2 at 10. However, while he was still in the shower area, he asked Spriggs and Stone for water, but instead of giving him water, they told him to shut up. *Id*. Malone states he also asked Sgt. Bolcar for water but Bolcar told him he could not trust him with a cup because he might use it to throw something. *Id*. Thus, Malone asserts he did not have access to water and could not use the shower nozzle for water because it had green mold or fungus on it. *Id*.

After returning to his cell, Malone learned that Spriggs had shut off the water in his cell between 3:00 and 4:00 p.m. on June 29, 2025. *Id*. at 9-10. Malone asserts he then asked Bolcar to turn on the water, but he never turned it on. *Id*. at 10. However, between 11:10 and 11:30 p.m., Officer Jaiden Boruff turned on the water in Malone's cell for two to four minutes and then shut it off. *Id*. Malone asserts that his water was not turned on again until between 5:30 and 6:00 a.m. on June 30, 2025. *Id*. at 11. At that point, Officer Torres turned Malone's water on for five to seven minutes and then shut it off. *Id*. After Torres shut off his water, Malone told Torres his water should remain on because he did not have any type of water restriction. *Id*. However, Torres said he was just doing what he was told to do and walked away. *Id*.

On June 30, 2025, between 10:00 and 11:05 a.m., Malone informed Lt. Breaton about the actions of Spriggs, Stone, Bolcar, Boruff, and Torres, and showed him the bottom side of his mattress, which was still a little wet. *Id*. Breaton told Malone that he

would be given a new mattress. *Id*. Malone also reported that the water in his cell had been turned off for no reason. *Id*. Breaton checked the computer to see if Malone had a water restriction and found he did not have any active restrictions. *Id*. Breaton then turned on the water in Malone's cell and apologized to him. *Id*.

"The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate

complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Here, Malone asserts the water in his cell was turned off sometime between 3:00 and 4:00 p.m. on June 29, 2025, and turned back on continuously sometime between 10:00 and 11:05 a.m. on June 30, 2025. While he complains that he did not have running water in his cell during this period, he did not return to his cell from the shower area until sometime between 10:39 and 11:00 p.m. on June 29. Shortly thereafter, Boruff turned on the water in his cell between 11:10 and 11:30 p.m. for two to four minutes. Torres also turned on the water in his cell between 5:30 and 6:00 a.m. for five to seven minutes on June 30. And between 10:00 and 11:05 a.m. on June 30, Breaton had fully restored the water in Malone's cell.

Based on the allegations in Malone's complaint—which describe a short-term, intermittent, and temporary issue with the water being turned off—the court cannot conclude the conditions he was subjected to created an excessive risk to his health or safety. As discussed, Malone had access to running water in his cell on two occasions during the time period he asserts his water was turned off. *See e.g.*, *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) ("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."). In any event, Malone does not have a right to running water in his cell. *See Gills v. Hamilton*, 164 F.4th 640, 645–46 (7th Cir. 2026) (collecting cases in

which the Seventh Circuit has consistently held that a cell without a sink or toilet, on its own, doesn't violate the Constitution).

Furthermore, Malone asserts Spriggs, Stone, and Bolcar did not give him water while he was in the shower area, and he was unable to drink from the shower nozzle because it had green mold or fungus on it. However, this short deprivation did not amount to a constitutional violation because Malone was not subjected to an excessive risk to his health or safety. Therefore, Malone has not stated claims against Spriggs, Stone, Bolcar, Boruff, or Torres.

Next, Malone asserts that Spriggs and Stone had used excessive force against him in retaliation for his complaints. ECF 2 at 9. To state a claim under the First Amendment, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). Here, none of Malone's allegations show that Spriggs and Stone's conduct was due to him filing grievances. Thus, Malone has not alleged facts from which it can plausibly be inferred that Spriggs and Stone used excessive force against him *because* he exercised his rights under the First Amendment.

Malone has also sued Grievance Specialist Michael Gapski and Grievance Specialist Kimberly Grandstaff. ECF 2 at 9. While he alleges they refused to process and investigate his grievances, Malone has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, Malone may not proceed against these two defendants.

As a final matter, Malone has sued Warden Brian English. However, it is unclear why Malone is suing him. Presumably, Malone states that he has sued Warden English because he is in charge of the Miami Correctional Facility. To be held liable under 42 U.S.C. § 1983, a defendant must have personal involvement in the alleged constitutional violation. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). Malone does not allege that Warden English was personally involved in the events in this case. Therefore, he may not proceed against Warden English.

For these reasons, the court:

(1) GRANTS Matthew J. Malone leave to proceed against Officer Coby Spriggs and Officer E. Stone in their individual capacities for compensatory and punitive damages for pushing and slamming him against a wall, kicking and dragging him on the floor through toilet water to the shower area, and pushing and slamming him into the shower pit on June 29, 2025, in violation of the Eighth Amendment;

(2) GRANTS Matthew J. Malone leave to proceed against Officer Coby Spriggs in his individual capacity for compensatory and punitive damages for spraying him with mace on his back, neck, arm, shoulder, ear, hair, and eyes on June 29, 2025, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Warden Brian English, Grievance Specialist Michael Gapski, Grievance Specialist Kimberly Grandstaff, Sgt. Bolcar, Officer Jaiden Boruff, and Officer Torres;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Coby Spriggs and Officer E. Stone at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Officer Coby Spriggs and Officer E. Stone to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: September 20, 2026.

/s/ Philip P. Simon

PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT